GYMETTA BRANTLEY *vs.* HAMPDEN DIVISION OF THE PROBATE
AND FAMILY COURT DEPARTMENT & others.[1]

Suffolk. March 4, 2010. - June 30, 2010.

Present: MARSHALL, C.J., IRELAND, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Practice, Civil,* Standing. *Supreme Judicial Court,* Superintendence of inferior courts. *Probate Court. Due Process of Law. Evidence,* Hearsay. *Department of Children & Families.*

A single justice of this court did not err in concluding that a petitioner lacked standing to challenge certain protocols adopted by the Hampden Division of the Probate and Family Court Department after the petitioner's action was filed in the county court. [181]

This court, in the interests of justice, determined to review, under its superintendency powers pursuant to G. L. c. 211, § 3, certain protocols employed by the Hampden Division of the Probate and Family Court Department, where the protocols implicated the fundamental right of presumptively fit parents to the care and custody of their children, as protected by due process of law; where the alleged violator of constitutional rights was the court itself and not a coordinate branch of government; where the alleged violation was systemic; and where considerations of basic fairness and of judicial economy favored review in the context of the instant litigation, given that the protocols continued directly to affect many litigants in that court each day. [181-184]

The use of certain "protocols" or "procedures" in the Hampden Division of the Probate and Family Court Department, which permitted judges in certain child-related proceedings to consider as substantive evidence a written report containing layered hearsay that did not bear indicia of reliability, even in cases where the parties did not authorize the release of that material, did not conform to principles of fairness when employed in a process that implicated constitutional rights of the highest order, such as the relationship of parent and child, particularly where the litigant against whom adverse hearsay was used had no meaningful opportunity effectively to rebut the information, or even to know its source; this court therefore stayed the application of the protocols and any revisions to those protocols. [184-188]

A petitioner failed to demonstrate that the use of certain protocols in the Hampden Division of the Probate and Family Court Department, by which

[1]The Commissioner of Probation and the Commissioner of the Department of Children and Families (collectively, respondents). Pursuant to St. 2008, c. 176, § 25, the Department of Social Services changed its name to the Department of Children and Families. See G. L. c. 18B.

the Department of Children and Families (department) transmitted certain information to the court, violated the requirements of G. L. c. 119, §§ 51E and 51F, or the department's own regulations [188-189], or violated the Fair Information Practices Act, G. L. c. 66A [189].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 18, 2006.

The case was heard by *Spina*, J.

*Peter R. Benjamin* (*John Reinstein* with him) for the petitioner.

*William W. Porter*, Assistant Attorney General, for the respondents.

MARSHALL, C.J. For many years the judges of the Hampden Division of the Probate and Family Court Department (Hampden) have employed certain "protocols" or "procedures" (the terms are used by that court) in child-related litigation that are intended to assist them in making decisions concerning a child's best interests, often in emergency circumstances. Pursuant to these protocols, judges, with the assistance of probation officers assigned to the court, orally obtain confidential information about litigants from the Department of Children and Families (department) that judges are permitted to consider as substantive evidence, even in cases where the parties did not authorize the release of that material. We were informed at oral argument that Hampden is the only division of the Probate and Family Court to employ these "protocols," which are at the core of the petitioner's appeal from portions of the judgment of a single justice in the county court.

Two petitioners filed an amended complaint in the county court seeking relief under G. L. c. 211, § 3, as well as declaratory and injunctive relief, to halt the respondents' use of the protocols on the ground that they infringed the petitioners' rights of due process under the Federal and Massachusetts Constitutions. They further asserted that the implementation of the protocols violated the statutory duties of the department under G. L. c. 119, §§ 51E and 51F, and the Fair Information Practices Act, G. L. c. 66A. The petitioners also sought class certification. See note 15, *infra*. After the case was filed, Hampden substantively revised its protocols several times.

The single justice concluded that the protocols employed in the petitioners' cases deprived them of an adequate opportunity

to rebut hearsay adverse allegations against them, in violation of their rights of due process. He ordered that Hampden "make available to litigants at ex parte hearings the reports of the probation officers containing information obtained orally from [the department] and presented to the judge, and afford those same litigants the opportunity to rebut such information."[2] The respondents have not appealed from this aspect of the single justice's decision, and it is not before us.

The single justice also concluded that the petitioners lacked standing to challenge the protocols in effect after the date they filed their complaint in the county court; declined to certify a class; and ordered entry of a judgment declaring that the department did not violate any of its statutory duties or regulations in acting pursuant to the protocols. The petitioner appeals from the judgment on the issues of standing, class certification, and the statutory claims. She seeks declaratory and injunctive relief on the merits of the revised protocols.[3]

We agree with the single justice that the petitioner has not demonstrated that she has been or will be harmed by the current protocols and affirm his ruling on standing. We also affirm the judgment of the single justice denying class certification and declaring the evidence insufficient to show that the department violated any of its statutory obligations or its regulations. Turning to the protocols currently in effect, we recognize the often daunting task of Probate and Family Court judges as they attempt to discern a child's best interests when parents are engaged in adversary litigation. We recognize that confidential department information concerning a parent or a family may be highly relevant in a legal dispute over a child's care or custody. Balancing the best interests of children with the rights of their parents or between adversary parents is always a delicate undertaking, not amenable to the drawing of bright lines. When these interests are balanced in the present case, certain aspects of Hampden's unique protocols do not withstand scrutiny. Specifically, we are concerned that the current protocols systemically may deny litigants in Hampden a meaningful opportunity to be heard on

---

[2]The petitioners' cases had concluded by the time the single justice issued his order. They did not seek rehearings.

[3]Brantley is the only petitioner seeking review of the single justice's judgment.

matters concerning the care and custody of their children. Because
in the singular circumstances of this case dismissal would work
a manifest injustice to nonparties, we exercise our broad discre-
tion pursuant to G. L. c. 211, § 3, to direct Hampden to stay
application of its current protocols or any revisions to those
protocols. The Chief Justice of the Probate and Family Court
may, if she chooses, promulgate a department-wide standing
order concerning use of confidential department information to
replace the current protocols in accordance with the Procedure
Regulating the Issuance of Standing Orders, Mass. Ann. Laws,
Rules of the Trial Court 1677 (LexisNexis 2008-2009), keeping
in mind the concerns we discuss later. Because of the funda-
mental issues involved, any such proposed department-wide
standing order shall be submitted to the Supreme Judicial Court
rules committee for approval before implementation.

1. *Background.* We draw our summary from the single justice's
orders and memoranda of decision, supplemented as appropriate
by the parties' statement of agreed facts and other uncontro-
verted evidence of record.

a. *Hampden protocols.* For a number of years, Hampden has
employed a policy in actions seeking guardianship of a minor,
temporary custody, temporary visitation, and protective orders
pursuant to G. L. c. 209A that involve children. Under the policy,
which is designed to assist Hampden judges in assessing a
child's best interests, parties are required to notify the court on
form "affidavits" developed specifically for this purpose when-
ever the party or a named child is presently or has been involved
with the department.[4] When one or both of the parties disclose
or the Court is otherwise aware of such department involve-
ment, Hampden employs practices and procedures for orally
contacting the department for information, and for transmitting
that information to the judge for consideration.

The protocols have been revised on several occasions, a fact
of significance to this litigation. We shall follow the organiza-
tion used by the single justice and separate the protocols into
"former protocols," i.e., those in effect until May, 2006, the

---

[4]The forms developed are titled "Affidavit of Petitioner for Custody of
Minor Children" and "Affidavit of Petitioner for Guardianship of Minor
Children."

filing date of the complaint in the county court, and "current protocols," i.e., those in effect from May, 2006, to the present.

b. *Former protocols.* Although the respondents have not contested the single justice's determination that the former protocols violated the petitioners' constitutional rights, the former protocols provide useful context for this appeal.

The former protocols were not set out in writing until they were changed slightly, as we describe below, in April, 2005. Under the former protocols, whenever a party or a named child in the above types of litigation was involved or had been involved with the department, a member of the staff of the Hampden probation office would contact the department by telephone. The responding department employee would relay orally to the probation staff member information about the nature and status of department's involvement with the adult or child, about which the department employee may have had no firsthand knowledge. The probation staff member, who may have had no involvement in the case, would then memorialize the information conveyed orally by the department on a written "telephone report form" (telephone report), and give the telephone report to the probation officer assigned to the case. The probation officer would either give the telephone report directly to the judge hearing the case, or if the parties participated in "dispute intervention,"[5] the probation officer would use the telephone report in conducting the intervention, and then forward it to the judge conducting a hearing. This procedure was followed at each scheduled appearance in a case, except at trial.

The telephone reports were not kept in the Probate and Family Court case files; rather, they were kept in probation department files, to which neither the parties nor their attorneys had access. Neither the parties nor their counsel were given a copy of the telephone reports. In some, but not all cases, judges would read or summarize the content of the telephone reports to the parties at the hearing, but such disclosure was not a require-

---

[5] The term "[d]ispute intervention" is defined in Rule 2 of the Uniform Rules on Dispute Resolution, S.J.C. Rule 1:18, 427 Mass. 1303 (1998), as "a process used in the Probate and Family Court . . . in which a neutral identifies the area of dispute between the parties, and assists in the resolution of the differences."

ment of the former protocols. In other cases parties were unaware that such information existed.

In April, 2005, Hampden revised the former protocols and formalized them in writing. Under the revised protocols, litigants were required on their form affidavits to answer "yes" or "no" to the statement, "I give permission to the [department] to release any and all information concerning myself and my children."[6] The form affidavits were docketed in the case docket as a department "affidavit."

c. *Use of the former protocols in the petitioners' cases.* In April, 2006, Billie Dee Smith and Ong Chonmany filed this action in the county court seeking relief pursuant to G. L. c. 211, § 3, and declaratory and injunctive relief against the respondents, as described earlier. Chonmany subsequently voluntarily withdrew from the case, and in November, 2006, Smith moved successfully to add Brantley as a named petitioner and further to amend her complaint. In the amended complaint, which was not verified, both Smith and Brantley alleged that, in 2005 and 2004, the probation office obtained information about them from the department without their authorization and without permitting them to have a copy of the telephone reports, and that the information contained in the telephone reports was used adversely to them by Hampden judges.

In their statement of agreed facts, the parties stated that with respect to the petitioner, the protocols were used in connection with divorce, custody, and protective order actions in litigation against her husband (although the protective order matter was never heard), beginning in September, 2004, and ending in May, 2005. The parties agree that, during these proceedings, the petitioner did not give written authorization for the department to provide, or for the court or probation department to obtain, "information about her or her children from any files in the custody or control" of the department.[7] In May, 2005, the petitioner was granted a divorce from her husband, the parties were

---

[6]A new procedure was also established in April, 2005, to facilitate communications between the probation office and each department office serving the court, requiring each to assign specific employees to handle requests for communication. Other features of the protocols as revised in April, 2005, are disputed by the parties but are not pertinent to this decision.

[7]The parties do not agree whether the petitioner or her counsel was permit-

granted joint legal custody of their minor child, and the petitioner was granted sole physical custody.

d. *Current protocols.* On May 16, 2006, approximately one month after the petitioners filed their complaint, the first judge in Hampden issued a memorandum to the probation office and the judges of that court instructing that they permit litigants to read the telephone reports.[8] The revisions were made in consultation with the administrative office of the Probate and Family Court department (administrative office). The revised protocols were not distributed to litigants or lawyers.

In December, 2006, the respondents moved to dismiss all claims of the amended complaint on the ground that the petitioners should have sought relief through the normal appellate process. While the motions to dismiss were pending, on February 20, 2007, Hampden further revised its protocols, again after consultation with the administrative office. The first judge distributed to judges in his court house and to other court officials a memorandum describing the revisions and orally shared the content of the memorandum with lawyers attending a bench-bar conference on March 1, 2007. However, copies of the memorandum were again not provided to lawyers or litigants. On April 30, 2007, the protocols were approved by the administrative office, and the first judge issued and distributed them to staff, judges, the probation office, and the register of probate, and posted the protocols in the registry of probate.

Both the February and April, 2007, protocols are substantively identical and they significantly revise the earlier protocols.[9] We summarize their main features here. The 2007 protocols restrict

ted to read the telephone reports pertaining to the divorce and custody actions. However, the petitioner concedes that this fact was not critical to the single justice's determination of the issues.

[8]The memorandum, in relevant part, stated: "Before litigants for whom a '[department] call' had been made are referred to the courtroom the Probation Officer assigned will permit the party or parties before the Court to read the [department] summary which has been communicated to the Probation Office. In a particular case if in the discretion of the Probation Officer a decision has been made not to permit access to the summary, due [to] protective or other concerns, that decision must be clearly noted on the file when it is transmitted to the courtroom, so that the Judge is made aware that a party or parties are unaware of the contents of that summary."

[9]Although the May 16, 2006, protocol is among the "current protocols," it

the circumstances in which the probation office may contact the department for information about its involvement with a litigant or named child: such contact is to occur only at the time of the filing of certain kinds of proceedings or at a party's first appearance in such a proceeding.[10] Also, under the 2007 protocols, the parties are responsible for informing the court at subsequent court events if the status of department involvement has changed. Contact with the department may be made only if the party consents to the release of such information to the judge or the judge, in his or her discretion, orders such disclosure pursuant to G. L. c. 119, § 51E or § 51F, or "any other applicable provision of law." Once it receives written notification of a party's consent or a court order of disclosure, the department may provide relevant documents.

The department may also provide by telephone "other or additional information," which the probation office then records on a report form.[11] Prior to a hearing, the parties and their counsel must be given an opportunity to review any documents provided by the department, as well as any telephone reports. The judge must give the parties the opportunity to rebut any adverse information, and may accord "the appropriate weight" to any information received or recorded by the probation office as a result of contacting the department.

After the hearing, the judge may request further information from the department where consent to disclosure has been given. Where consent is withheld, the judge may make further orders requiring release of additional information. Finally, the 2007 protocols provide that "[n]othing in this procedure shall be construed to preclude a judge from issuing such other or additional

---

was essentially superseded by the February and April, 2007, protocols. Accordingly, the "current protocols" essentially refer to the protocols put in place in 2007.

[10]Under the 2007 protocols, the probation office contacts the department in proceedings involving guardianship of a minor, an initial complaint for protection from abuse where the alleged victim is the child or where the complainant seeks custody or visitation, ex parte motions for custody or visitation, or motions for temporary custody or visitation.

[11]The methods for obtaining the information orally by a staff member of the Hampden probation office from a department employee who may have no firsthand knowledge of the matter apparently are the same as under the former protocols.

orders or rulings, not referred to herein, as the judge might determine are appropriate in the circumstances."

The parties have agreed that the current protocols have been "implemented and applied" in Hampden "as written," and that Hampden "has no present intention" either to revert to prior protocols or to change the current protocols.

e. *Prior proceedings.* In the county court, on April 30, 2007, the respondents filed a supplemental memorandum to their motions to dismiss, arguing that the case had become moot in light of the adoption of the 2007 protocols. In February, 2008, the single justice denied the motions to dismiss as to the petitioners' claims regarding the former protocols. Among other things, he noted that the petitioners raised allegations of violations of their due process rights that, if true, infringed on their fundamental interests in their relationships with their children. Even if the former protocols were no longer in place, the single justice continued, the important issues affect nonparties and were capable of repetition, yet evading review. See, e.g., *Diafario* v. *Commissioner of Correction*, 371 Mass. 545, 552 (1976). Finally, the single justice concluded that, although remedies may be available under the regular review process, the parties had raised "present systemic issues affecting the proper administration of justice" that were appropriate for review pursuant to G. L. c. 211, § 3. Thus, even though the declaratory judgment act does not apply to the judicial department, see G. L. c. 231A, § 2, and declaratory relief was available as to the department, he ruled that relief pursuant to G. L. c. 211, § 3, "may be broadly tailored to end systemic abuse affecting the proper administration of justice."[12]

On August 27, 2008, the single justice issued his memorandum

---

[12]In between the filing of the respondents' motions to dismiss and their denial by the single justice, the single justice issued an interim order. In essence, he directed that a procedure for having access to and using confidential department information in Probate and Family Court matters be promulgated as a general standing order pursuant to the Procedure Regulating the Issuance of Standing Orders, Mass. Ann. Laws, Rules of the Trial Court 1677 (Lexis-Nexis 2008-2009), with the additional requirements that the proposed standing order be submitted to the Supreme Judicial Court rules committee (rules committee) within ninety days, and a thirty-day period of public comment. The Chief Justice of the Probate and Family Court timely submitted the proposed standing order to the rules committee, published it for comment, and forwarded

of decision and judgment in this matter. We now turn to the petitioner's claims on appeal.

2. *Standing*. We first consider whether the petitioner has standing to assert claims concerning the current protocols. It is a general rule that, in order to have standing in any capacity, "a litigant must show that the challenged action has caused the litigant injury." *Slama* v. *Attorney Gen.*, 384 Mass. 620, 624 (1981). See *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("a plaintiff must demonstrate standing separately for each form of relief sought"). Here it is undisputed that the petitioner's cases were resolved in May, 2005, almost one year before the action was filed in the county court, and thus that her direct claims of a due process violation concerned only the former protocols. We were informed at oral argument by her counsel that the petitioner currently has no case pending in Hampden, nor does she claim that she has plans to be, or is likely to be, a party in any such case. Alleged injury that is "speculative, remote, and indirect" will not suffice to confer standing. See *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 323 (1998). The complained-of injury "must be a direct consequence of the complained of action." *Id.* There was no error in the single justice's conclusion that the petitioner herself lacked standing to challenge the current protocols.[13]

3. *G. L. c. 211, § 3*. The petitioner's failure to establish standing to challenge the current protocols does not end our inquiry. The petitioner has brought to our attention a sui generis divisional rule of procedure that implicates an important constitutional principle: the fundamental right of presumptively fit parents to the care and custody of their children, as protected by due process of law. See *Care & Protection of Sophie*, 449 Mass. 100, 104 (2007) (review of award of temporary custody pursu-

comments received to the rules committee. The rules committee, however, determined that it would take no action, and has since taken no action, on the proposed standing order. Rather, it determined, the proposed order and the comments it elicited would be considered by the single justice in connection with the instant action. The single justice did not consider the matter in his memorandum of decision and judgment.

[13]The petitioner argues that we must reach the issue of class certification before resolving the issue of standing. We discuss class certification at note 15, *infra*.

ant to G. L. c. 211, § 3, appropriate where question before the court implicates the "constitutionally protected interest of a parent in his relationship with his children"). Beyond the constitutional rights at stake, three important considerations persuade us that, in the interests of justice, we can and should review these protocols under our superintendency powers pursuant to G. L. c. 211, § 3.[14]

First, the alleged violator of constitutional rights here is a court itself. The Legislature, in enacting G. L. c. 211, § 3, has expressly authorized this court to take cognizance of and, where appropriate, to remedy actions by courts of inferior jurisdiction that may adversely affect the administration of justice. Under our superintendency role, considerations of direct harm, required in most cases, need not always serve as a barrier against judicial review where the alleged violator of the Constitution is a court itself and not the coordinate branches. Cf. *Doe* v. *The Governor*, 381 Mass. 702, 704 (1980), quoting *Kaplan* v. *Bowker*, 333 Mass. 455, 459 (1956) ("From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of the government"). We have exercised our general superintendence powers to resolve, inter alia, " 'important issues with implications for the effective administration of justice'

---

[14]General Laws c. 211, § 3, in pertinent part, states as follows:

"The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue all writs and processes to such courts and to corporations and individuals which may be necessary to the furtherance of justice and to the regular execution of the laws.

"In addition to the foregoing, the justices of the supreme judicial court shall also have general superintendence of the administration of all courts of inferior jurisdiction, including, without limitation, the prompt hearing and disposition of matters pending therein . . . and it may issue such writs, summonses and other processes and such orders, directions and rules as may be necessary or desirable for the furtherance of justice, the regular execution of the laws, the improvement of the administration of such courts, and the securing of their proper and efficient administration . . . ."

and 'matter[s] of public interest that may cause further uncertainty within the courts.' " *Simmons* v. *Clerk-Magistrate of the Boston Div. of the Hous. Court Dep't*, 448 Mass. 57, 61 (2006), quoting *First Justice of the Bristol Div. of the Juvenile Court Dep't* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 391 (2003). Cf. *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 755 (1977), quoting *Myers* v. *Commonwealth*, 363 Mass. 843, 844 (1973) (pursuant to G. L. c. 211, § 3, "we can and should act 'at whatever stage in the proceedings it becomes necessary to protect substantive rights' ").

Second, the petitioner here alleges a "systemic" violation of constitutional rights by a court. Allegations of systemic abuses affecting the proper administration of justice are particularly appropriate for review pursuant to G. L. c. 211, § 3. See, e.g., *Care & Protection of Zita*, 455 Mass. 272, 279 (2009) (review pursuant to G. L. c. 211, § 3, appropriate where act of trial court raises a matter of "systemic importance"); *Simmons* v. *Clerk-Magistrate of the Boston Div. of the Hous. Court Dep't, supra*, quoting *A Juvenile* v. *Commonwealth (No. 1)*, 380 Mass. 552, 556 (1980) ("Where, as here, a systemic issue affecting the proper administration of the judiciary has been presented, resolution of the issue by this court is appropriate and 'should not await some fortuitous opportunity of report or ordinary appeal' "). See also *Kennedy* v. *Justice of the Dist. Court of Dukes County*, 356 Mass. 367 (1969) (exercising authority pursuant to G. L. c. 211, § 3, to revise inquest proceedings).

Finally, considerations of basic fairness and of judicial economy favor our review of the current protocols in the context of this litigation. It makes little sense to dismiss the case today, leaving the constitutionality of the current protocols in question, knowing that they continue directly to affect many litigants in Hampden each day. See, e.g., *Care & Protection of Sophie, supra* at 105 (intervention pursuant to G. L. c. 211, § 3, warranted where our ruling on matter of court procedure will affect "the course of many future temporary custody hearings"). Moreover, the protocols have been revised frequently and may be revised in the future. Thus, aggrieved litigants may have little opportunity to pursue judicial review through the normal appellate process. Further, where the continuing systemic practice of a court is at

issue, little is to be gained by dismissing today a challenge to the systemic practice that likely will be relitigated shortly thereafter.

In sum, we reserve consideration of issues pursuant to G. L. c. 211, § 3, for "extraordinary" and "exceptional" matters. *Commonwealth* v. *Clerk of the Boston Div. of the Juvenile Court Dep't*, 432 Mass. 693, 697 (2000). This case falls within those criteria; we will review the current protocols under our superintendency power pursuant to G. L. c. 211, § 3. In light of our review, we need not, and do not, disturb the single justice's ruling on the issue of class certification.[15]

4. *Constitutionality of current protocols.* The respondents argue that the current protocols provide litigants in Hampden with adequate due process. We disagree. As we stated, we recognize the difficult task of Probate and Family Court judges in attempting to further the best interests of each child in the context of often highly contentious adversary proceedings. But such concerns must be addressed within the bounds of constitutional protections guaranteed to litigants, which help ensure fairness to all parties. We now turn to a review of some aspects of the current protocols sufficient to demonstrate that they are unconstitutional and must be stayed.

The current protocols permit Hampden judges in certain child-related proceedings to consider as substantive evidence a written report summarizing an oral report that summarizes a written report containing hearsay information.[16] Use of such layered

[15]We agree with the single justice that class certification is properly denied where the relief afforded pursuant to G. L. c. 211, § 3, see *infra*, will apply to all the individuals who share predominant issues of fact and law with the petitioner, and where, as here, certification of a class will lead to relief no greater or in addition to that afforded pursuant to G. L. c. 211, § 3. See Mass. R. Civ. P. 23 (b), 365 Mass. 767 (1974) (litigant asserting class status must prove that class action proceeding "superior to other available methods" of litigating case). We have granted the relief requested by the petitioner, namely a declaration that the current protocols are unconstitutional, and the injunctive relief of staying such protocols. Moreover, without the petitioner, who does not have standing, there is no class representative. Nothing in our decision today should be construed as precluding another party who alleges that he or she is presently harmed as a consequence of the use of any of the protocols before the issuance of this decision from bringing an action for further relief before the appropriate court.

[16]Portions of telephone reports submitted by the parties in their statement of agreed facts contain uncorroborated statements concerning marital fidelity, neglect of a child, and allegations of dangerous materials in the home.

hearsay does not conform to principles of fairness when employed in a process that "implicates constitutional rights of the highest order," *Care & Protection of Zita, supra* at 284, such as the relationship of parent and child. See *Duro* v. *Duro,* 392 Mass. 574, 580 (1984) ("fundamental fairness, as well as due process concerns, requires that a parent be given the opportunity effectively to rebut adverse allegations concerning his or her child-rearing capabilities").[17]

This is not to suggest that the use of confidential department reports containing hearsay is never permitted, a point the petitioner readily acknowledges. Before such confidential department information is used in a proceeding that may result in the separation of parent and child, we require that such hearsay bear the "indicia of reliability." *Covell* v. *Department of Social Servs.,* 439 Mass. 766, 786 (2003). We have in many circumstances held that documents containing hearsay are, with proper redaction and other provisions, admissible in care and protection proceedings because they bear such indicia of reliability. *Id.* For example, the "general admissibility of case work documents and court investigator reports" prepared by department staff in the course of their work is "no longer seriously in question." *Adoption of Iris,* 43 Mass. App. Ct. 95, 100 n.8 (1997). See *Custody of Michel,* 28 Mass. App. Ct. 260, 267-268 (1990), and cases cited (discussing admissibility of hearsay statements in § 51A and § 51B reports and report of court-appointed social worker investigator).

In contrast, the type of hearsay admissible under the current protocols does not bear the same indicia of reliability as the reports of department staff made in the course of their investigations that we have held admissible. The multi-level hearsay that may be embedded in the array of department documents and telephone reports that the judge is free to consider under the current protocols is comprised of abbreviated oral summaries of

---

[17]We are unpersuaded by the respondents' argument that, because the telephone reports are shown to the litigant or her counsel prior to a hearing, they cannot constitute "extra-record" evidence. "Even if the reports at issue were not, as a technical matter, 'ex parte,' they constituted extra-record information that deprived the plaintiff of her ability to test adverse evidence by cross-examination or offer evidence in rebuttal." *Duro* v. *Duro,* 392 Mass. 574, 576 n.4 (1984).

voluminous records made by persons who may have no firsthand experience with the case. Pursuant to the current protocols, a department staff member summarizes to a probation staff member a case file with which he or she may have no experience, and the probation staff member in turn summarizes the summary and writes a telephone report. No review of the telephone reports is required by department personnel familiar with the facts and circumstances of the case. For example, one telephone report summarizes a conversation with a department employee concerning a § 51A report; the telephone report contains unattributed information of uncertain origin stating, "Both parties physically assaulted one another, and argued loudly." Such hearsay is inherently unreliable.[18,19]

Moreover, our review of the record demonstrates that telephone reports often contain unfiltered judgments and opinion. Even where circumstances justify the introduction in evidence of confidential department files, "expressions of opinion, evaluation, or judgment of the children or the resisting parent" generally should be redacted. *Adoption of George,* 27 Mass. App. Ct. 265, 274 (1989). See *Care & Protection of Zita,* 455 Mass. 272, 280 (2009), quoting *Care & Protection of Bruce,* 44 Mass. App. Ct. 758, 766 (1998) (department investigative reports entered in evidence must "be limited to a statement of facts, or redacted to exclude opinion, diagnosis or evaluation").[20]

---

[18]The respondents assert that the due process issue is minimized in this case because the current protocols will be used "mainly" in proceedings on temporary orders and not proceedings "on the merits." We are concerned here, however, not with the nature of the hearing but with the unreliable nature of the hearsay introduced adversely to a litigant that may result in the removal of child from a parent, even if temporarily.

[19]Cases cited by the respondents supporting the proposition that *some* hearsay evidence may be considered reliable is inapposite. In none of those cases is the hearsay as convoluted and layered as the hearsay at issue here. See *Commonwealth* v. *Durling,* 407 Mass. 108, 121-122 (1990) (reliable hearsay in police report). See also *Costa* v. *Fall River Hous. Auth.,* 453 Mass. 614, 625-627 (2009) (same); *Commonwealth* v. *Given,* 441 Mass. 741, 746-748, cert. denied, 543 U.S. 948 (2004) (same); *Covell* v. *Department of Social Servs.,* 439 Mass. 766, 788 (2003) (use of prior complaint of child victim at department hearing at which child not present to testify); *Flynn* v. *Warner,* 421 Mass. 1002, 1003 (1995) (child's statement without objection in mother's application for abuse prevention order); *Szymkowski* v. *Szymkowski,* 57 Mass. App. Ct 284, 289 (2003) (factual content of department report).

[20]It is also reasonable to assume that the department employee orally sum-

Due process requires, at minimum, an opportunity to be heard "at a meaningful time and in a meaningful manner." *Adoption of Simone*, 427 Mass. 34, 39 (1998), quoting *Armstrong* v. *Manzo*, 380 U.S. 545, 552 (1965). The multi-layered nature of the hearsay a judge may receive and consider in making a custody determination, and the fact that the current protocols frequently are applied in emergency hearings and other circumstances where full evidentiary hearings are not required, see, e.g., *E.N.O.* v. *L.M.M.*, 429 Mass. 824, 834 n.13, cert. denied, 528 U.S. 1005 (1999) (judge not required to hold full evidentiary hearing on temporary order for visitation), may mean that the litigant against whom adverse hearsay is used has no meaningful opportunity effectively to rebut the damning information, or even to know its source.[21]

Under the current protocols, parties are not entitled to obtain copies of the telephone reports or department documents that may be considered substantively by the court. It is difficult to imagine how an attorney can properly prepare a client, or the client properly prepare himself or herself, to rebut the adverse information contained in a telephone report in an ongoing case without a copy of the report. A parent, for example, may not have considered certain information material in a telephone report and may not have made notes of it, only to find that the judge or opposing counsel relies heavily on that information. The respondents argue that it is proper to withhold copies because they often contain sensitive information that might be misused. Judges, however, are adept at ordering the redaction of sensitive information and fashioning appropriate protective orders for sensitive information.

Judges in the Probate and Family Court often have little time

marizing the department file and the probation staff member summarizing the telephone report will anticipate that the probation officer and the judge, respectively, will be looking for the most troubling information concerning the involved party.

[21]The respondents are correct that parties in a civil matter have no right of confrontation and cross-examination under art. 12 of the Massachusetts Declaration of Rights. See, e.g., *Frizado* v. *Frizado*, 420 Mass. 592, 596 n.3 (1995). Rather, we focus here on whether "fundamental fairness" requires that a litigant in Hampden against whom hearsay is used pursuant to the current protocols has an "opportunity effectively to rebut" such adverse information. *Duro* v. *Duro, supra* at 580.

in which to make decisions that may have life-long consequences for parents, children, and families. Access to "accurate, objective information" may be of "foremost importance" in accurately gauging a child's best interests, particularly in emergency hearings involving feuding parents. *Gilmore* v. *Gilmore*, 369 Mass. 598, 604-605 (1976) (report of court-appointed guardian ad litem). We recognize that the current protocols are intended to meet the practical concerns of judges in difficult circumstances. But practical considerations, even laudable practical considerations, cannot be addressed at the expense of the constitutional rights of litigants. Because, as we were informed, no other division of the Probate and Family Court Department uses the protocols at issue here, we infer that the Probate and Family Court Department employs other ways of balancing its paramount goal of protecting the best interests of children and the due process rights of parents.

We turn now to the last issue raised by the petitioner, the question of the department's compliance with its statutory and regulatory obligations.

5. *Statutory and regulatory claims.* These claims pertain only to the department. The petitioner claims that Hampden protocols violate the requirements of G. L. c. 119, §§ 51E and 51F,[22] but as the single justice ruled, the express intent of both of these provisions is to regulate the use of written department records. Neither provision specifically prohibits transmission of confidential department information orally to a court. Similarly, the single justice did not err in refusing to credit the petitioner's speculation that "it appears likely" that the department provided information to Hampden that should have been expunged pursu-

---

[22]General Laws c. 119, § 51E, requires, inter alia, that the department maintain "a file of written reports" pursuant to G. L. c. 119, §§ 51A-51D; provides for the release of "written reports" only in certain circumstances (including by order of the court or on "written and informed consent of the child's parent or guardian"); and requires the redaction of identifying information concerning allegations of abuse or neglect in certain circumstances. Pursuant to § 51E, violations of these strictures by department personnel are punishable by fine or by imprisonment of up to two and one-half years. General Laws c. 119, § 51F, inter alia, requires the department to maintain a central registry of information identifying children who were the subjects of reports of abuse or neglect pursuant to G. L. c. 119, § 51A or § 51B, with the same provisions for redaction and for violations of its provisions as in § 51F.

ant to § 51E. There is no evidence in the record supporting this assertion. Additionally, the petitioner provided no evidence that the department failed to comply with its own regulations in 110 Code Mass. Regs. § 12.07 (2008), for releasing department information sought by compulsory process, and no evidence that the department failed to comply with its own regulations in 110 Code Mass. Regs. § 12.08 (2008), governing the availability of reports pursuant to §§ 51A and 51B. The single justice properly declined to order declaratory or injunctive relief in the absence of evidence demonstrating that the department failed to follow its own regulations.

The petitioner's argument with respect to the Fair Information Practices Act, G. L. c. 66A, is also without merit. General Laws c. 66A, § 1, prohibits an "agency" maintaining a "personal data system" from allowing any other individual or agency other than the holder of the information to have access to personal data unless the "data subject," see *id.*, consents or such disclosure is permitted by statute or regulation. G. L. c. 66A, § 2. The petitioner has not demonstrated that, as she asserts, consent under the protocols can never be informed or voluntary. More importantly, the petitioner has not offered any authority for her presumption that the recipient of the personal data, Hampden (of which the probation office is a part) is another "agency." G. L. c. 66A, § 1 (defining "[a]gency" to mean, in relevant part, "any agency of the executive branch . . . or any authority created by the general court to serve a public purpose, having either statewide or local jurisdiction").

6. *Conclusion.* We affirm the judgment of the single justice concluding that the plaintiff lacks standing to assert claims concerning the current protocols, denying class certification, and declaring the evidence insufficient to show that the department violated any of its statutory obligations or its regulations. In the singular circumstances of this case, and in the interests of justice, we exercise our broad discretion pursuant to G. L. c. 211, § 3, to review the current protocols, and conclude that their use violates the due process rights of affected litigants.

For the reasons stated above, we direct Hampden to stay application of its current or any revised protocols. We invite the Chief Justice of the Probate and Family Court, if she chooses,

to promulgate a department-wide standing order concerning use of confidential department information to replace the current protocols in accordance with the Procedure Regulating the Issuance of Standing Orders, Mass. Ann. Laws, Rules of the Trial Court 1677 (LexisNexis 2008-2009). Any such standing order shall be submitted to the Supreme Judicial Court rules committee for approval before implementation.[23,24]

*So ordered.*

---

[23]In our view, and barring unusual circumstances, uniform rules and uniform forms within Trial Court departments will be more conducive to ensuring the fair, uniform administration of justice than division-by-division differences in practices and procedures.

[24]In a single sentence at the end of her brief, the petitioner asks for attorney's fees for the action in the county court and for this appeal. She provides no statutory or other reason why she is entitled to any such fees. The request is denied.