The mother appeals from a decree issued by a judge of the Juvenile Court terminating her parental rights to the child, Tessa, and approving a plan for adoption. See G. L. c. 210, §§ 3 & 6. On appeal, the mother asserts that (1) the trial judge abused her discretion by proceeding to trial in the mother's absence, and trial counsel was ineffective for not requesting a continuance; (2) the judge's subsidiary findings do not support the ultimate finding of unfitness; and (3) the judge abused her discretion in declining to order posttermination or postadoption visitation. We affirm.
Discussion. 1. Mother's failure to appear for trial. The Department of Children and Families (department) initiated care and protection proceedings on September 24, 2014, six months after the child tested positive for cocaine at birth. The petition was filed due to the mother's subsequent failure to demonstrate her sobriety and engage in treatment, and her presence with the child's father[3] at the time he was arrested for possession of a large amount of heroin. G. L. c. 119, § 24. The mother stipulated that she was currently unfit to care for the child, who was then placed in the department's permanent care on October 13, 2015. G. L. c. 119, § 26. The judge approved the goal of adoption on July 27, 2016, and again on June 13, 2017. The mother did not appear at the hearing on either date. The mother also did not attend the two pretrial conferences held on September 28, 2017, and October 24, 2017. Nor was the mother present when trial commenced on December 8, 2017.
When the trial began, the mother's counsel informed the judge that she "just spoke to my client who indicated that she's been trying since yesterday to get a ride here." Counsel informed the judge that the mother hoped to arrive in one hour, and stated, "I explained that I cannot make the Court wait for her." The judge allowed the mother's counsel to participate on her behalf and stated explicitly that, should the mother arrive, counsel was permitted to request a reconsideration of any matters decided in her absence. Counsel participated in the hearing, which lasted only twenty minutes, objected to evidence, and cross-examined the department's witness on the mother's behalf. There is no indication in the record that the mother appeared at the court house in one hour or at all on the day of trial. Counsel did not seek reconsideration. Nor did the mother file a motion to reconsider or to reopen or submit an affidavit explaining the reasons for her failure to appear.
On appeal, the mother contends that the judge abused her discretion in failing to wait for the mother to appear for trial, violating her right to due process. "State action terminating a parent-child relationship must comport with due process, including notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Adoption of Zev, 73 Mass. App. Ct. 905, 905 (2009). "Fundamental fairness, as well as due process concerns, requires that a parent be given the opportunity effectively to rebut adverse allegations concerning his or her child-rearing capabilities." Brantley v. Hampden Div. of the Probate & Family Court Dep't, 457 Mass. 172, 185 (2010), quoting Duro v. Duro, 392 Mass. 574, 580 (1984). However, "[t]he decision on whether to continue any judicial proceeding is a matter entrusted to the sound discretion of the judge, and the judge's decision will be upheld absent an abuse of that discretion." Adoption of Gillian, 63 Mass. App. Ct. 398, 409-410 (2005).
In the present case, there was no abuse of discretion. Between October 13, 2015, when the mother stipulated to unfitness, and trial on December 8, 2017, the mother did not appear for any court date. The mother had notice of the proceedings, and had a full and fair opportunity to participate. Contrast Adoption of Zev, 73 Mass. App. Ct. at 905-906 ; Adoption of Whitney, 53 Mass. App. Ct. 832, 836 (2002) ; Adoption of Edmund, 50 Mass. App. Ct. 526, 529 (2000). Before proceeding to trial, the judge informed the mother's counsel that if the mother were to arrive, she could request a reconsideration of matters decided in her absence. The judge was not, as a matter of law, required to continue the trial. See Adoption of Talik, 92 Mass. App. Ct. 367, 371-372 (2017). Although the mother asserts on appeal that transportation difficulties were the cause of her failure to appear, no competent evidence of transportation problems was offered at trial or thereafter, and the judge was not required to credit the mother's explanation as reported by counsel.
Moreover, at the time of trial, the child had been in the custody of the department for over two years and "the paramount interests of the child[ ] involved[ ] argued against delay." Care & Protection of Quinn, 54 Mass. App. Ct. 117, 122 (2002). The mother visited the child once in 2017, and at the time of trial had not seen the child for eight months. It was within the judge's discretion to draw the inference that the mother had "essentially abandon[ed] [the child] and the court process." See Adoption of Talik, 92 Mass. App. Ct. at 373. It was also within the judge's discretion to consider the importance of the child's need for stability and permanence. See Adoption of Nancy, 443 Mass. 512, 517 (2005).
For similar reasons, the mother's claim that her trial counsel was ineffective because she did not move for a continuance is unfounded. See Care & Protection of Stephen, 401 Mass. 144, 150 (1987) ("Absent exceptional circumstances, we do not review claims of ineffective assistance of counsel for the first time on appeal"). There is nothing in the record to suggest that the mother did appear, or would have, given her lack of participation in previous proceedings. The judge was not obligated to credit her claim of transportation difficulties, and counsel's performance did not fall below that of an ordinary fallible lawyer when she made the strategic decision, with knowledge of the judge's ruling that she could move for reconsideration if the mother arrived later, to go forward and try the case. See Care & Protection of Georgette, 439 Mass. 28, 33-34 (2003) ; Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
2. Adequacy of the evidence. The mother asserts that the judge's subsidiary findings of fact do not support the ultimate finding of unfitness because they were either stale, clearly erroneous, or inadmissible. A trial judge's findings of fact are entitled to considerable deference. We "reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).
The judge issued detailed findings of fact based on trial exhibits and witness testimony, which we summarize briefly here. In March 2015, a toxicology screen performed on the child at birth was positive for cocaine, although a subsequent toxicology screen of the mother was negative. The mother was in a relationship with the father, who had numerous drug arrests and convictions. During the pendency of the case, the mother was present in a car with him when he was arrested in possession of a large amount of drugs. The father admitted to having a forty to fifty bag a day habit. The mother denied that she used drugs, or that the father did.
For several years after the initial removal of the child, the department developed service plans requiring the mother to, among other things, participate in substance abuse evaluation, mental health services, and periodic drug screens. At the time of trial, the mother had not undergone substance abuse evaluation, had declined to take any drug screens, and had been terminated from therapy because she did not attend. After stipulating to her unfitness to parent the child in October 2015, the mother stopped meeting with the department's social worker and all but stopped visiting the child. As previously noted, she visited the child only once in 2017 and had not seen her in the eight months before trial.
The judge determined that the mother had significant barriers to parenting, that she had abandoned any effort to remove those barriers, and that she had, in effect, abandoned the child. Based on these facts and others, the judge found the mother was unfit. The mother makes several arguments regarding the finding of unfitness. We address the primary arguments in turn.[4]
The mother contends that the judge improperly found that she engaged in drug-related activity and prostitution, and that the finding was unsupported by admissible evidence. The department's November 2017 family action plan, admitted in evidence at trial without objection as exhibit 8, states that police told the department social worker that the mother had reportedly been seen with drug paraphernalia, had an outstanding warrant, and was a "known prostitute/drug dealer." The judge admitted the exhibit under the statutory exception to the hearsay rule for facts contained in service plans. See G. L. c. 119, § 29 ; Mass. G. Evid. § 1115(b)(2)(C) (2018). See also Adoption of George, 27 Mass. App. Ct. 265, 274 n.5 (1989). The social worker who approved the report testified at trial and was cross-examined by the mother's trial counsel. The evidence was admissible. See id. at 269-275.
Notably, the judge was careful not to make a finding regarding drug use, drug sale, or prostitution. Rather, the judge properly relied on the evidence in the police report to find that the services recommended by the department were necessary to evaluate the barriers to the mother's ability to be a parent, and that the mother's failure to participate in these services reflected on her ongoing fitness to care for the child.
The mother also asserts that the judge's references to the early stages of the case have grown stale with time. See Adoption of Jacques, 82 Mass. App. Ct. 601, 607 (2012). While it is true that "stale information cannot be the basis for a finding of current parental unfitness[,] ... [p]rior history ... has prognostic value." Adoption of George, 27 Mass. App. Ct. at 268.
The judge properly considered the fact that the child tested positive for cocaine at birth, together with evidence showing the mother's unwillingness to participate in evaluation or services from the inception of the petition, as reflective of the mother's ability to parent. The judge also properly found that the mother had disengaged from the child over a three-year period. The judge considered the mother's failure to appear for court appearances and trial "indicative of [her] much larger and longer pattern of not engaging in parenting [the child]." See Adoption of Talik, 92 Mass. App. Ct. at 372 ("absence may suggest that the parent has abandoned his rights in the child or cannot meet the child's best interests"). The mother's pattern of disengagement began at the outset of the case, and the judge properly considered it in making her over-all finding that the mother had "essentially abandon[ed]" the child and was not a reliable caregiver. The judge's finding of unfitness was supported by the evidence.
3. Posttermination/postadoption visitation. The mother maintains that it was an abuse of discretion to decline to order visitation after the termination of her parental rights, and asserts that the judge should have made specific findings regarding whether such contact would be in the child's best interests.
Once it is established that a parent's rights should be terminated, whether to order visitation is left to the discretion of the trial judge. Adoption of Ilona, 459 Mass. at 65-66. Here, the judge found that the child had no significant relationship or bond with the mother, a finding which was fully supported by the record. See Adoption of Vito, 431 Mass. 550, 563 (2000) (judge should consider whether there is "a significant, existing bond with the biological parent"). Furthermore, because the child had been living with the adoptive family for most of her life, visitation was not required to ensure a successful transition. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 564-565 ("The purpose of [posttermination] contact is not to strengthen the bonds between the child and his biological mother or father, but to assist the child as he negotiates ... the tortuous path from one family to another"). The adoptive parent stated that the mother was welcome to see the child if the mother was drug free. See Adoption of Ilona, supra at 64 (adoptive parents entitled to presumption that they will act in child's best interests with respect to visitation). The judge did not abuse her discretion when she concluded that any contact with the mother was to be at the discretion of the child's adoptive family and the department.
Decree affirmed.

The father did not appear at trial and has not appealed from the decree terminating his parental rights.

"Other points, relied on by the [mother] but not discussed in this [memorandum and order], have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).