## CINDY E. DIAZ vs. JUAN G. GOMEZ.

No. 11-P-305.

Suffolk. October 13, 2011. - June 26, 2012.

Present: GRAHAM, RUBIN, & WOLOHOJIAN, JJ.

*Abuse Prevention. Due Process of Law,* Abuse prevention. *Constitutional Law,* Waiver of constitutional rights. *Waiver. Practice, Criminal,* Waiver. *Evidence,* Hearsay.

At a hearing to extend an abuse prevention order, the evidence was sufficient to support the Probate and Family Court judge's finding by a preponderance of the evidence that the plaintiff was reasonably in fear of imminent physical harm, where the judge was entitled to take account of the totality of the circumstances along with her findings about the defendant's conduct on the date in question. [62] GRAHAM, J., dissenting.

This court declined to exercise its discretion to consider whether a Probate and Family Court judge, at a hearing to extend an abuse prevention order for one year, had violated the defendant's constitutional right to due process of law by directing court personnel to solicit hearsay information on which the judge relied in making her decision, where the defendant had waived the issue by not raising the claim in the lower court. [62-64] GRAHAM, J., dissenting.

COMPLAINT for protection from abuse filed in the Suffolk Division of the Probate and Family Court Department on October 22, 2010.

A hearing to extend the abuse prevention order was had before *Elaine M. Moriarty,* J.

*Peter T. Marano* for the defendant.

RUBIN, J. Following a hearing in the Probate and Family Court, an ex parte abuse prevention restraining order, obtained by the plaintiff, Cindy E. Diaz, against the defendant, Juan G. Gomez, pursuant to G. L. c. 209A, § 3, was extended for one year. The defendant filed a timely appeal. He argues that the facts set forth in the plaintiff's affidavit were insufficient to warrant the extension of the ex parte order. He also claims that the judge

violated his due process rights by soliciting and then considering layered hearsay statements in support of the plaintiff's allegations against him. We conclude that the facts were sufficient to warrant extension of the order and that the defendant has waived his constitutional argument. Accordingly, we affirm.

*Facts.* a. *The incident and plaintiff's affidavit.* On October 13, 2010, the plaintiff sought a restraining order against her former spouse, the defendant, following an incident involving the parties' teenage son, who was living with the plaintiff. The plaintiff got into a dispute with her son, who pushed her, and she responded by slapping him in the face. The son called the defendant, who called the local police. The police came to the plaintiff's home. For the duration of the time the police were there, the defendant, himself a police officer, sat in uniform in his police cruiser at the end of the plaintiff's street (a cul-de-sac). The police deemed the incident a minor domestic dispute and left, but not before the defendant asked them why they did not arrest the plaintiff. Shortly thereafter, on October 22, 2010, the plaintiff sought a protective order from the Probate and Family Court. The plaintiff and the defendant have three children, and the plaintiff and her fiancé had a son shortly before the hearing.

In the plaintiff's affidavit in support of the c. 209A restraining order, she recited the details of the October 13 incident and also asserted that the defendant had been physically abusive in the past, had struck her with his hand and other objects, and had placed a gun to her head. She noted that "[b]ecause [the defendant] works for the Boston Police he carries a gun. Because of this and the past abuse I am in fear of my life." She testified at a hearing before the judge that when her then-husband put a gun to her head, he told her that if she were to leave him he would put her "six feet under." She also testified that this was not the first time the defendant had sat in his police cruiser near her house in a manner that she described as "harass[ing]." The plaintiff had obtained at least two restraining orders prior to the one at issue, and had again averred under oath in prior proceedings that the defendant threatened to put her "six feet under" if she left him. The judge issued an ex parte G. L. c. 209A restraining order against the defendant, effective for ten days,

after determining that there was a substantial likelihood of immediate danger of abuse of the plaintiff by the defendant.

b. *The November 9 hearing.* On November 9, 2010, a hearing was held before the same judge to determine whether the ex parte order should be extended. The plaintiff appeared pro se, and the defendant appeared represented by counsel. The defendant chose not to present any evidence at the hearing, electing instead to challenge the adequacy of the plaintiff's affidavit in support of the ex parte order and her testimony at the hearing.

Prior to the hearing, the judge directed the parties to the probation department for an interview with a probation officer. At the hearing itself, counsel for the defendant asserted that the plaintiff's allegation concerning the defendant putting a gun to the plaintiff's head was false. He asserted that the Boston police had conducted an internal investigation "by detectives," and that "[the defendant] was cleared. His weapons were returned to him. He was put back on duty." Defense counsel also averred that the plaintiff had never made the allegation about the gun in any of the several other restraining order proceedings brought against the defendant.

The judge informed the plaintiff that she was going to obtain the affidavits from those other proceedings. The plaintiff asserted that she had included the allegation in previous affidavits, to which defense counsel replied, "I think as an officer of the court, I'd be bound to just make a mention that, this plaintiff needs to seek counsel. She's getting into a Fifth Amendment issue here, because my recollection of this testimony and what she's offering under oath right now is starkly different."

The judge concluded by saying, "I'm going to, during the luncheon hour, I'm going to see if I can get the affidavits from the district court." The judge also said, "I'm also going to have him [presumably a probation officer] call internal affairs. I don't know if there's any information they'll release . . . ."

Rather than objecting, defense counsel said, "I think it may have been handled by the district detectives in [Boston police district C-11], actually, if my memory serves correctly." The plaintiff then suggested that the judge call Boston police Sergeant Craven, a domestic abuse officer. In response, defense counsel raised another issue in regard to Sergeant Craven, asserting that

he believed Craven may have helped the plaintiff prepare the affidavit. Reminding the plaintiff that she was testifying under oath, defense counsel asked her if Sergeant Craven "sat down with you and did this?" The plaintiff testified that Craven had not assisted her, and her attorney helped her with the affidavit. Apparently concerned that Craven was acting outside of her duties as a police officer if she assisted the plaintiff, defense counsel argued that the affidavit appeared to be the work of a police officer, not an attorney. Upon defense counsel's request, the judge gave defense counsel permission to explore the issue, and the following ensued:

> JUDGE: "I'm going to have probation call Dorchester district court and get the affidavits for the prior restraining order, and any decision of the judge. I don't know if there's any — Sometimes they do write something after they hear it. I'm also going to have them call district C-11, see if they have an investigation [inaudible] charge the [defendant] put a gun to your head in 2007. I'll see if there's a police report for October 13th [i.e., the date of the incident that triggered the application for the c. 209A order at issue in this case] —"

> ". . .

> DEFENSE COUNSEL: "On this matter, Your Honor [inaudible] the court officer, you might want to have the court reach out to the Roxbury district court, because in this police report, it went to a clerk's hearing. And the court magistrate found no probable cause to issue."

> JUDGE: "On this October 13th —"

> DEFENSE COUNSEL: "On this report, I believe, Your Honor. And at that, the issue was, she didn't want to go forward with those charges. And the court found no probable cause."

After examining a document, apparently the police report of the incident on October 13, the judge said, "I don't see anything

here that says [the defendant] came to the scene or was called to the scene or anything." The plaintiff responded, "He was there. I mean, if — If you call the police officer [who wrote the report], he could let you know." The judge said, "All right . . . ." At no point did the defendant object to the procedure proposed by the judge.

After a recess, the judge returned. She indicated that the probation office had obtained the affidavits from the previous c. 209A proceedings. She noted that she had sat on one of the previous matters in 2009, and that the plaintiff asserted in her affidavit in that case that "there was a threat that [the defendant] would put her six feet under if she was to leave him." Defense counsel noted that there was no mention of a gun. The judge agreed but noted that the affidavit "mentions a serious threat."

The judge also said, "Probation also spoke with Sergeant Craven, who has dealt with the family for years. The latest incident started when [the plaintiff] approached [the defendant] on a paternity matter for her fourth child." Apparently, the defendant had refused to sign a denial of paternity form sought by the plaintiff; according to defense counsel, the plaintiff's fiancé had ultimately filed a complaint seeking to establish paternity. "After that," the judge continued, "[the defendant] began calling and threatening [the plaintiff] and would appear at her home and threaten her. She reports [the plaintiff] is in fear of [the defendant], that she gets frightened when she comes to court as she does not have a lawyer, and ends up dropping the case. [Sergeant Craven] [n]oted that she had taken [the defendant's] guns away from him in the past, and that he has borrowed friends' guns. So she had to take — again take them away. This harassment has made her consider filing charges if it continues."

Defense counsel's only objection to the information the judge put forward was, "Your Honor, if we could be heard on Sergeant Craven, and if the order's going to issue, I'd like a subpoena for her brought in because there's no . . . incident report on [Boston police department] Form 26 [the criminal incident report form] written" about the incident involving the paternity form, "[a]nd we're going to be pursuing an internal affairs complaint

against Sergeant Craven within the police department." As counsel explained later, when the defendant did not return the denial of paternity form, the plaintiff had Sergeant Craven call the defendant and "get involved in a matter that's not a criminal issue."

The judge responded, "Counsel, . . . if you want to set it down for fuller evidentiary hearing, you can request that." Defense counsel did not, however, request an evidentiary hearing but argued that the defendant's original threat had occurred over one year before, and that there was no imminent threat of physical harm.

The judge stated that she would extend the order for one year, and defense counsel indicated that he would appeal. He noted the basis of his objection on the record, that the order was "baseless," that the judge "abus[ed] [her] discretion," that there was "not an imminent matter of bodily harm or fear," and that the plaintiff abused the system by seeking restraining orders whenever a pleading was filed in another case and "has stated things under oath that she's failed to put in an affidavit under oath."

The judge said, "Counsel, I'm looking at what's on the affidavit. And I am considering what Sergeant Craven has reported to probation. . . . You have a right to disagree, and you're free to do so." Finally, defense counsel said, "Your Honor, very well. And note my objection, that Sergeant Craven has taken a role beyond that of the Boston Police department in investigating a crime. In this court — And Your Honor, I believe this — This order is not based on any evidence of showing of any imminent fear of bodily harm. And we'll address it in the appellate court."

c. *The judge's decision.* The judge extended the order for one year and issued written findings. She noted that she considered the defendant's actions in the context of the prior relationship of the parties.

In regard to the incident at issue, the judge found that the parties' oldest son called the defendant after an altercation with the plaintiff, and that the defendant was outside the plaintiff's house for a "considerable portion of time" before the police arrived. She noted that the plaintiff "states she is fearful [of the

defendant] as he is a police officer and carries a gun. She alleges in general terms he stalks her." The judge noted the plaintiff's testimony that the defendant "had hit her in the past." The judge found that [the plaintiff] "testified credibly that [the defendant] put a gun to her head in 2007 (she was unsure of the time and had previously indicated she believed the incident was in 2004)."

The judge also noted the following:

> "[The plaintiff] in her affidavit testified [the defendant] had hit her in the past both with his hand and with objects, and that in 2007 he hit her with a fist and that in the past he has put a gun to her [head].
>
> ". . .
>
> "[The plaintiff] submitted a police report on July 9, 2009 in which she reported to police she and her boyfriend had been threatened by [the defendant] during the exchange of [the plaintiff's] children with [the defendant]. [The defendant] would not initially allow children to get in her car and told her not to bring her 'punk ass boyfriend around my job' and that [the defendant] then threatened boyfriend.
>
> ". . .
>
> "[The plaintiff] also filed an affidavit in support of an order entered by this Court in August, 2009 (subsequently vacated at her request with both parties represented by counsel) in which she testified by affidavit that [the defendant] had threatened to put her six feet under.
>
> "The Court also sent for and reviewed an affidavit of [the plaintiff] entered in support of a restraining order on November 10, 2008 in Dorchester District Court, which while not specific as to incidents, references that she has complained of incidents of his conduct and that she had photos of what [the defendant] had done, that she is living in fear.
>
> ". . .
>
> "[The defendant's] counsel believed [the plaintiff] had

assistance in preparing her typed affidavit and inquired if S[ergeant] Craven of the Police Domestic Violence Unit had prepared it. The Court had the Sergeant contacted who reported to Probation that she had been involved with the family for years; that [the plaintiff] comes to Court without a lawyer, gets frightened and drops the case; that the Sergeant has taken [the defendant's] guns away from him in the past and that [he] has borrowed friends' guns. This information was read to both sides in open Court. [The defendant's] counsel indicated his desire to subpoena the Sergeant but did not pursue a further evidentiary hearing indicating he would appeal this Court's decision."

In conclusion, the judge found the plaintiff was "in reasonable fear of imminent serious physical harm," and that the defendant "made no overt threat on Oct. 13 but that his presence on [the] scene for so long outside at her house in uniform and in his police cruiser was intimidating and I consider this incident arose in the context of a relationship in which there have been two past serious threats to her safety."

The defendant filed this appeal.

*Discussion.* a. *Sufficiency of the evidence.* The defendant first claims that the evidence was insufficient to support the judge's finding by a preponderance of the evidence that the plaintiff was reasonably in fear of imminent physical harm. The evidence here was sufficient. As the defendant acknowledges, in making her determination, the judge was entitled to take account of the totality of the circumstances. *Vittone* v. *Clairmont*, 64 Mass. App. Ct. 479, 486 (2005). The judge found credible the plaintiff's testimony that the defendant previously put a gun to her head and threatened to kill her if she left him, and neither that finding, nor any of the others made by the judge, is clearly erroneous. In essence, the defendant argues that other inferences might have been drawn by the judge. But in light of the background facts found by the judge, along with her findings about the defendant's conduct on October 13, the judge's finding by a preponderance of the evidence that the plaintiff was in reasonable fear of imminent physical harm is sufficiently supported by the facts.

b. *Due process claim.* Next, the defendant argues for the first

time on appeal that the judge violated his constitutional right to due process of law under both the Federal and the State Constitutions by directing court personnel to solicit hearsay information from Sergeant Craven upon which the judge relied in making her decision. In this, he relies upon *Brantley* v. *Hampden Div. of the Probate and Family Ct. Dept.*, 457 Mass. 172 (2010) (*Brantley*), in which the Supreme Judicial Court invalidated certain procedures of the Hampden Division of the Probate and Family Court Department under which, in certain child protective custody cases, "judges, with the assistance of probation officers assigned to the court, orally obtain[ed] confidential information about litigants from the Department of Children and Families . . . that judges [were] permitted to consider as substantive evidence, even in cases where the parties did not authorize the release of that material."[1] *Id.* at 173.

As our detailed description of the proceedings before the trial judge make clear, however, through failure to raise this claim in the trial court, the defendant has waived any due process objection to the procedure followed by the judge. Defense counsel actively participated in requesting, and crafting the scope of, the out-of-court inquiry that the judge undertook, suggesting from whom in the Boston police internal affairs department the court should solicit hearsay.[2] Defense counsel did not object to the judge's solicitation of information from Sergeant Craven when the plaintiff proposed that that be part of the judge's inquiry. Most significantly, defense counsel never mentioned due process, either before or after the judge obtained Sergeant Craven's statements. Indeed, his only objection was that Sergeant Craven had involved herself in the dispute about the paternity form, something he argued was beyond her authority as a police officer, and about which he said he would file an internal affairs complaint.

---

[1] The defendant also argues that he was denied an adequate opportunity to cross-examine Sergeant Craven, but he does not acknowledge that the judge offered the defendant an opportunity for a full evidentiary hearing, which counsel declined.

[2] In fact, this method of judicial inquiry was first suggested by the judge as a way to address the defendant's own assertions about what was stated in previous cases — evidence of which he failed to introduce — and his allegations that the plaintiff was perjuring herself both about her prior testimony and about obtaining assistance from Sergeant Craven in preparing her affidavit.

The defendant therefore has waived his constitutional claim. "Although we occasionally exercise our discretion and consider an issue first raised on appeal, we do so where 'the questions presented are of some public importance,' *and the outcome of the case is not changed by our consideration of them*" (emphasis added). *Commonwealth* v. *Bettencourt,* 447 Mass. 631, 633 (2006), quoting from *Commonwealth* v. *Morrissey,* 422 Mass. 1, 4 n.5 (1996).

We recognize that in *Brantley,* despite a determination, not unlike the one we have made here, that the appellant was not in a position to bring a constitutional challenge to court procedures, the Supreme Judicial Court nonetheless passed upon them. General Laws c. 211, § 3, the statute under which it did so, however, provides only the Supreme Judicial Court with the power of superintendence over the lower courts.

The judgment extending the abuse prevention order is affirmed.

*So ordered.*

GRAHAM, J. (dissenting). I am of the opinion that the judge's action of obtaining copies of prior affidavits filed by the plaintiff was proper and appropriate, but I conclude that her reliance on off-the-record layered hearsay provided by probation department personnel, at her direction, constitutes an improper departure from settled standards for conducting a G. L. c. 209A hearing. Moreover, I conclude that the defendant did not waive his objection to the improper proceedings. Therefore, I respectfully dissent.

The facts alleged by the plaintiff's affidavit that related to the precipitating event are not disputed.[1] At the hearing on the plaintiff's request for an extension of the c. 209A order, the plaintiff claimed that in 2007 the defendant threatened her in

---

[1]The plaintiff got into an argument with the eldest son, age fifteen or sixteen at the time, about obeying her rules. The son pushed her, she slapped him, and the son called the defendant. The defendant called the local police, and for the duration of their time at the plaintiff's home, he sat in uniform in his police cruiser at the end of the plaintiff's street. When the police officers left the home, the defendant asked them why they had not arrested the plaintiff. The officers informed the defendant that they determined the incident was a minor dispute.

her home by placing a gun to her head. The defendant vigorously denied the allegation. Moreover, defense counsel informed the judge that the Boston police internal affairs department investigated that charge and then cleared the defendant of the allegation.

After hearing from the plaintiff and defense counsel, the judge informed the parties that she would obtain copies of affidavits the plaintiff had filed in support of prior restraining orders sought by the plaintiff, and that she would direct a probation officer to "call internal affairs." The plaintiff urged the judge to call Boston police Sergeant Craven to verify her claims.[2] In response to the plaintiff's request, the judge stated that she would have the probation department call Boston police district C-11 regarding the claim that the defendant put a gun to the plaintiff's head. Thereafter, at the judge's direction, a member of the probation department called and spoke to Sergeant Craven at district C-11 about the alleged gun incident. The judge then called a recess.

At 3:00 P.M., the judge resumed the hearing. She noted, "Probation placed a call to [district] C-11. *They report no incidents at [the plaintiff's] home in '07"* (emphasis added). Moreover, she informed the parties that a member of the probation department had spoken with Sergeant Craven, and noted that Sergeant Craven had no report of any claim by the plaintiff that the defendant threatened her with a gun. Nonetheless, the judge stated that she intended to extend the restraining order for one year. Defense counsel immediately objected on the ground that the order was not based on a showing of a reasonable fear of imminent serious physical harm. The judge responded, "Counsel, I'm looking at what's on the affidavit. *And I am considering what Sergeant Craven has reported to probation.* All right? . . . You have a right to disagree, and you're free to do so." (Emphasis supplied.)

Defense counsel objected to the judge's ruling and argued, essentially, that the record evidence at the hearing was insufficient to support an extension of the ex parte order. On this record, I am persuaded that the defendant was deprived of his right to a fair hearing because the judge issued her order based,

[2]"Sergeant Craven, you could give her a call. I believe she was the person that took the gun away from him."

in part, on undisclosed and unrecorded hearsay elicited from Sergeant Craven by a member of the probation department.

In seeking extension of a c. 209A order, "[t]he plaintiff must make the case for the awarding of relief," *Frizado* v. *Frizado,* 420 Mass. 592, 596 (1995), and the judge may not relieve the plaintiff of this obligation. See *Banna* v. *Banna,* 78 Mass. App. Ct. 34, 35-36 (2010). At the same time in some circumstances, the judge may hear testimony that would ordinarily be considered hearsay provided it bears sufficient "indicia of reliability." *Brantley* v. *Hampden Div. of the Probate & Family Ct. Dept.,* 457 Mass. 172, 185 (2010), quoting from *Covell* v. *Department of Social Servs.,* 439 Mass. 766, 786 (2003). Nevertheless, there must be "fairness in what evidence is admitted and relied on," *Frizado* v. *Frizado, supra* at 598.

Here, the judge solicited and relied, improperly, on unreported hearsay to credit the plaintiff's allegations. Moreover, the plaintiff's major allegation of abuse by the defendant had proven to be false.

I would vacate the judgment and remand the case for a new hearing before a different judge.