NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-489

E.W.

vs.

M.W.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, M.W., appeals from a G. L. c. 209A abuse prevention order, issued by a Probate and Family Court judge after an evidentiary hearing, that prevents him from having contact with his former wife, E.W. Concluding that E.W. did not present sufficient evidence to show that she had a reasonable fear of imminent serious physical harm, we vacate the order.

Background. In October 2022, E.W. applied for a c. 209A order. An ex parte order was issued, and a two-party hearing on whether to extend the order was held later that month. From E.W.s' affidavit,[1] and from the evidence introduced at the

_____

[1] Although E.W. did not formally adopt her affidavit at the hearing, M.W. examined her about it extensively. We therefore assume in E.W.'s favor that the judge could have considered it. But see Banna v. Banna, 78 Mass. App. Ct. 34, 35-36 (2010).

hearing, the judge reasonably could have found the following facts.

The parties divorced in 2017.  In 2019, E.W. sought, and was granted, a c. 209A order against M.W.  The order was either terminated or expired after only one year, during which the parties had no contact.  Once the 2019 order was no longer in force, M.W. began e-mailing E.W. "excessively," sometimes as often as three to five times a day, even though E.W. gave him no response.  The content of the e-mail messages is not clear from the available record, and the parties' characterizations of the messages differ.

From E.W.'s perspective, M.W.'s messages were rife with attempts to intimidate, shame, and harass her about her parenting style and her romantic life.  At the extension hearing, she testified that she felt like M.W. was still pursuing a romantic relationship with her and that she felt "like this [was] the type of situation [where] if he can't have me, no one will."  She also asserted that M.W.'s e-mail messages, which mentioned an ongoing "war" between himself and E.W., left her feeling threatened and in fear of imminent physical harm, especially in light of M.W.'s past history of mental health issues and his potential access to weapons.

In M.W.'s view, the majority of the messages he sent to E.W. were about co-parenting their minor child, and he sent so

2

many messages only because he had no other method of contacting her about their two children.  At the hearing, he emphasized that none of his e-mail messages contained threats of physical violence and that the "war" he often alluded to was being waged by E.W. against him, not vice versa.  Aside from the e-mail messages, M.W. testified that the parties had not spoken to each other in three years and that they did not interact during the few events they had both attended at their children's school.

E.W. also offered evidence that, despite M.W.'s agreement not to do so when the 2019 order ended, M.W. e-mailed E.W.'s employer, prompting her to seek the c. 209A order at issue here. The message, which M.W. characterized as a "public records request," asked E.W.'s employer for copies of every e-mail message sent between her and her former supervisor over a period of twenty years.  M.W. confirmed during the extension hearing that the messages were to be used as evidence in a lawsuit against her employer to show that E.W. engaged in an affair with the supervisor (which she denied), causing M.W. and their children "ongoing damage."  E.W. interpreted M.W.'s actions as an escalation of his attempts to intimidate and control her.

At the close of the evidence, the judge found that E.W. had met her burden to show that she was "in imminent fear" of M.W. and that M.W. had been "abusive and harassing."  The judge extended the order for two years.

3

Discussion. M.W.'s chief argument on appeal is that there was insufficient evidence to support the judge's implicit finding that E.W. had a reasonable fear of imminent serious physical harm. A decision to issue or extend a c. 209A order is reviewed for an abuse of discretion or other error of law, while according the credibility determinations of the judge the utmost deference. See Noelle N. v. Frasier F., 97 Mass. App. Ct. 660, 664 (2020). Factual findings are reviewed for clear error. See Diaz v. Gomez, 82 Mass. App. Ct. 55, 62 (2012). Where, as here, the judge has not made any specific factual findings on the record, we consider whether the judge could find, by a preponderance of the evidence, together with all permissible inferences, that the defendant, among other things, "plac[ed] another in fear of imminent serious physical harm." G. L. c. 209A, § 1 (defining "abuse"). See Frizado v. Frizado, 420 Mass. 592, 597 (1995) (preponderance standard in c. 209A cases).

When the plaintiff seeks to establish that the defendant's words and conduct have put the plaintiff in fear of imminent serious physical harm, that fear must be objectively reasonable in light of the defendant's actions and the attendant circumstances. See Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 143 (2006). Additionally, "[g]eneralized apprehension, nervousness, feeling aggravated or hassled, i.e., psychological distress from vexing but nonphysical intercourse, when there is

4

no threat of imminent serious physical harm, does not rise to the level of fear of imminent serious physical harm." Wooldridge v. Hickey, 45 Mass. App. Ct. 637, 639 (1998). In this case, we conclude that E.W. has not produced evidence that she had a reasonable fear of imminent serious physical harm.

First, M.W.'s harassing behavior alone does not rise to the level of a physical threat. In Carroll v. Kartell, 56 Mass. App. Ct. 83 (2002), the court vacated a c. 209A order issued after the defendant began contacting the plaintiff "with great frequency," in hopes of cultivating a friendship. Id. at 84. The court acknowledged that the defendant's "persistent phone calls and other unsolicited efforts to contact [the plaintiff] . . . combined with the revelation of [a pending murder charge] against him, caused [her] to fear [the defendant] and his attentions generally," but concluded that the defendant's actions did not constitute abuse absent any implicit or explicit threat of physical harm. Id. at 86.

Here, like in Carroll, M.W. was accused of e-mailing E.W. excessively in an attempt to rekindle their relationship or to harass her. E.W. also testified that he had appeared unannounced at their minor child's football game but had not attempted to speak with her. Cf. Carroll, 56 Mass. App. Ct. at 84-85 (defendant approached plaintiff several times during event to speak with her). E.W. did not describe any overtly

threatening behavior on that occasion, or on any of the other occasions where the parties were in the same place.  Thus, while M.W.'s harassment may indeed put E.W. in subjective fear of his further actions, it does not by itself rise to the level of abuse under Carroll.  See id. at 86-87.

Secondly, the only evidence produced by E.W. of an implicit or explicit threat of physical harm against her was M.W.'s vague reference to a "war" between the parties.  In Noelle N., the plaintiff was similarly engaged in a contentious custody battle with her former husband and was in fear of his escalating and erratic behavior, which included contacting her and her employer against her wishes.  Noelle N., 97 Mass. App. Ct. at 663.  In that case, the defendant, a former Marine, told the plaintiff that "this is war" and that he would "stop at nothing to get his children."  Id. at 662.  However, in affirming the issuance of the c. 209A order, the court emphasized that, in addition to the defendant's harassing behavior and his threat of war, the defendant emailed the plaintiff about the possibility of her sudden and unexpected death and often told her about his firearm -- even once displaying it to their children during a videocall.  Id. at 662.

Here, by contrast, E.W. testified that she was not sure whether M.W. owned any weapons, and she could not point to any e-mail messages containing a more explicit threat to her

6

physical safety than her own interpretation of the term "war." See Ginsberg, 67 Mass. App. Ct. at 143 ("the victim's fear or apprehension . . . must be more than subjective and unspecified" [quotations omitted]).  Additionally, evidence showed that M.W.'s e-mail messages actually reflected his belief that the "war" between the parties was started by E.W. and was being waged against him.  Thus we conclude that, when put in context, M.W.'s references to "war" do not carry the same implicit threat of physical violence as the threat of "war" made in Noelle N.

Ultimately, we do not doubt that M.W.'s inappropriate behavior and language likely caused E.W. to feel harassed, annoyed, and even subjectively afraid of M.W. in a general sense.  See Carroll, 56 Mass. App. Ct. at 86-87 (explaining that subjective fear can be understandable but still not reasonable).  We emphasize that our ruling does not preclude E.W. from seeking a protective order should additional evidence showing reasonable fear of imminent serious physical harm arise in the future.  And, to the extent that communication about the parties' minor child creates difficulties, nothing in our decision precludes either party from seeking relief in the context of their divorce proceeding.

Nevertheless, we are constrained to conclude that neither M.W.'s behavior nor his language as reflected in the present record can be reasonably interpreted as a threat of imminent

serious physical harm; they do not meet the definition of "abuse" under G. L. c. 209A, § 1. The order dated October 26, 2022, is vacated. The case is remanded to the Probate and Family Court for entry of an order directing the appropriate law enforcement agency to destroy all records of the vacated order in accordance with the third paragraph of G. L. c. 209A, § 7.[2]

So ordered.

By the Court (Sacks, Singh & Walsh, JJ.[3]),

Assistant Clerk

Entered: April 12, 2024.

---

[2] The other two issues raised in M.W.'s brief -- that the judge improperly prevented him from introducing evidence and violated several rules of judicial conduct -- are merely assertions of error without sufficient legal argument, and we need not consider them. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). A thorough perusal of the record, however, convinces us that the judge acted appropriately and without bias when deciding the issues in this case.

[3] The panelists are listed in order of seniority.