NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-658

Y.F.

vs.

E.O.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, E.O., appeals from the extension of a harassment prevention order issued in favor of the plaintiff, Y.F., pursuant to G. L. c. 258E, § 3 (258E order). We affirm.

Background. On April 17, 2025, an ex parte harassment prevention order issued against the defendant, presumably based on an affidavit supporting the plaintiff's complaint, in which the plaintiff claimed that the defendant, whom she had never met in person, had committed three or more acts of harassment against her. See G. L. c. 258E, § 1; Gassman v. Reason, 90 Mass. App. Ct. 1, 7 (2016).

On April 29, 2025, a District Court judge held a two-party hearing. Both parties were present and represented themselves.

The affidavit in support of the harassment prevention order described the following:  In October 2024, the plaintiff received a text message from an unknown number asking for her to call the number back.  The plaintiff did not return the call but sent a text message and asked for the caller's identity.  Shortly thereafter, the plaintiff received a video call from the defendant, who said that she knew that the plaintiff and the defendant's husband, "Edward," were engaged in an affair.  The plaintiff responded that she was unaware that Edward was married.  The defendant told the plaintiff that she had obtained from Edward's cellular telephone three videos of the plaintiff that were of an intimate nature.  Later, the defendant threatened to distribute the videos to Edwards's contacts and to post them online.

The plaintiff stated that the defendant continued to harass her for the next five months, including by obtaining a job at the plaintiff's place of employment; gaining access to the plaintiff's work schedule and following her to her job and threatening to talk to her supervisor; calling the plaintiff's place of employment and sending e-mail messages to the plaintiff's employer in an attempt to have her terminated; continually calling the plaintiff until the plaintiff blocked her cellular phone number and then contacting the plaintiff with

2

a different phone number; and, in voicemails and text messages, threatening to kill the plaintiff. When the plaintiff warned the defendant to stop contacting her, the defendant responded that "she won't stop until she finish[es] me."

At the two-party hearing, the judge first heard from the plaintiff, who testified that the defendant "keeps following me, stalking me, calling my job, doing all that you can think of to abuse me." The plaintiff told the judge that she had copies of e-mail messages that she wanted the judge to review.[1] Finally, the plaintiff testified that the defendant claimed to have three videos "of sexual content, and she's harassing me, saying that she might upload them to the internet, so I am embarrassed about it."

The judge then gave the defendant an opportunity to be heard. The defendant told the judge that the plaintiff entered her "matrimonial home" and "constantly sleeps over with my husband, has [a] sexual relationship with my husband." The defendant explained that she had never met the plaintiff and repeatedly told the judge that she had only spoken with the plaintiff on two occasions. The first communication was the initial text message after she had discovered the affair. The defendant characterized her first contact with the plaintiff as

---

[1] The e-mail messages were not admitted into evidence.

3

a "friendly conversation." The defendant testified that during the second telephone conversation, the plaintiff insulted her, calling the defendant mentally unstable and referenced a sexual assault that the defendant had confided to Edward about. The defendant told the judge that she did not contact the plaintiff again but that she did call the plaintiff's employer and reported the fact that Edward and the plaintiff were in a dating relationship, which the defendant claimed was against company policy.

After the defendant testified, the plaintiff told the judge that "all that she says is a lie. And these messages here, I have all the proof that I need to show you. When this lady contacted me at 3:54 in the morning, I didn't know who she was . . . . Please read it so you will see she's a compulsive liar." The judge turned to the defendant and said "Ma'am, I just want to understand. Your testimony under oath is that these are the only text messages that you sent?" While the defendant had repeatedly testified that she had only contacted the plaintiff twice, the defendant stated that "I have . . . maybe like four or five few more of insults, yeah. That was all." Although the record is not crystal clear, it appears that the judge read the e-mail messages offered by the plaintiff. The judge told the defendant that "the history of that

conversation, it's clearly not just that one conversation that you both had. And the information directing her by name and what was put, that's disturbing. That's disturbing. The whole situation is disturbing."

The judge found that the plaintiff had established three or more incidents in which she was in fear of the defendant. The judge extended the harassment prevention order for a period of six months.

In this appeal, the defendant argues, in essence, that the plaintiff's testimony was not credible and that the defendant's messages and actions did not rise to the level of harassment. She also claims that the judge did not give her a fair opportunity to be heard or allow her to present evidence, and that the judge failed to consider the resulting harm that the issuance of a 258E order would have on her and her autistic child.

Discussion. To obtain a harassment prevention order, a plaintiff must demonstrate "harassment," which the statute defines in relevant part as "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property." G. L. c. 258E, § 1. In reviewing the issuance of

5

a harassment prevention order, "we consider whether the judge could find, by a preponderance of the evidence, together with all permissible inferences," that the defendant committed three or more qualifying acts of harassment aimed at a specific person.  A.T. v. C.R., 88 Mass. App. Ct. 532, 535 (2015).  No specific findings are required if, after reviewing the record, we can "discern a reasonable basis for the order in the judge's rulings and order."  G.B. v. C.A., 94 Mass. App. Ct. 389, 396 (2018).  The plaintiff bears the burden of establishing that the three acts were "maliciously intended," defined by the statute as being "characterized by cruelty, hostility, or revenge." A.T., supra, quoting G. L. c. 258E, § 1.

The defendant argues that there was insufficient evidence for the judge to have found that she committed three qualifying acts of harassment.  We are not persuaded.  Here, the plaintiff presented evidence that the defendant repeatedly contacted her by calling her on the telephone, leaving voicemails, and sending text messages.  The defendant threatened to kill her in text messages and voicemails, changed her place of employment to that of the plaintiff, and followed her to her job.  At the hearing, the judge implicitly credited the plaintiff's version of these events, disbelieved the defendant's version, and concluded that the evidence qualified as harassment under G. L. c. 258E, § 1.

In sum, the plaintiff's affidavit and testimony at the evidentiary hearing amply support three separate and distinct acts of harassment.

The defendant argues that, while her text messages to the plaintiff were "emotionally reactive," they were not made with the intent to place the plaintiff in fear of physical harm. When an alleged act of harassment consists solely of speech, it "must be either a 'true threat' . . . or 'fighting words.'" A.R. v. L.C., 93 Mass. App. Ct. 758, 760 (2018), quoting O'Brien v. Borowski, 461 Mass. 415, 425 (2012). True threats include "direct threats of imminent physical harm" and "words or actions that -- taking into account the context in which they arise -- cause the victim to fear such [imminent physical] harm now or in the future." O'Brien, supra. Especially when viewed in the context of the defendant's other hostile and unwanted conduct directed at the plaintiff, the record supports a conclusion that the defendant's statements in which she threatened to kill the plaintiff and "finish her" caused the plaintiff to fear imminent physical harm. See A.T., 88 Mass. App. Ct. at 536 (defendant's threat to "make your life a living hell" fell within definition of "true threat").

Turning to the defendant's argument that the plaintiff's testimony was not credible, "[w]e accord the credibility

determinations of the judge who heard the testimony of the parties . . . [and] observed their demeanor . . . the utmost deference" (quotation and citation omitted). Noelle N. v. Frasier F., 97 Mass. App. Ct. 660, 664 (2020). The judge had the opportunity to evaluate the witnesses' demeanor and credited the plaintiff's testimony about the defendant's three acts of harassment. The judge noted the discrepancy in the defendant's testimony and questioned her about the number of messages the defendant sent to the plaintiff. The judge also characterized the defendant's text messages as "disturbing." "We are in no position to substitute our judgment for that of the judge on credibility questions." Commonwealth v. Werner, 81 Mass. App. Ct. 689, 698 (2012).

For the first time on appeal, the defendant contends that the judge erred in failing to consider an audio recording of the plaintiff making threatening and defamatory remarks to the defendant. She also contends the judge erred in failing to consider a document from the defendant's employer that would rebut the plaintiff's stalking allegation and that the judge improperly considered privileged communication between the defendant and her husband.

We agree with the defendant that a hearing for a harassment prevention order must comport with fundamental requirements of

8

due process. See R.S. v. A.P.B., 95 Mass. App. Ct. 372, 373 n.4 (2019). These requirements include fair notice of the proceedings, a meaningful opportunity to be heard, a right to testify, a right to present evidence, and a right to cross-examine witnesses. See Idris I. v. Hazel H., 100 Mass. App. Ct. 784, 788 (2022). Because proceedings under G. L. c. 258E are protective and not penal, "the rules of evidence need not be followed, provided that there is fairness in what evidence is admitted and relied on." A.P. v. M.T., 92 Mass. App. Ct. 156, 161 (2017), quoting Frizado v. Frizado, 420 Mass. 592, 597-598 (1995), abrogated on another ground by Zullo v. Goguen, 423 Mass. 679, 681 (1996).

Here, after the judge announced her decision to extend the harassment order, the defendant mentioned that she had her employment application and denied the plaintiff's claim that she applied to the plaintiff's employer for the purpose of harassing and stalking her. The defendant also revealed that she had a voice recording of the plaintiff "rape shaming" her. The defendant did not move to introduce either the audio recording or the employment application as exhibits during her testimony and did not object when the plaintiff asked the judge to read the messages sent by the defendant to her husband. We conclude that the defendant has waived any due process claim regarding

9

the procedure followed by the judge.  See Diaz v. Gomez, 82 Mass. App. Ct. 55, 63 (2012) (failure to raise due process claim in trial court waives any due process claim on appeal).

Even if the claims were not waived, we discern no error. In harassment prevention hearings, the general practice is that "the law of evidence should be applied flexibly by taking into consideration the personal and emotional nature of the issues involved, whether one or both of the parties is self-represented, and the need for fairness to all parties." Mass. G. Evid. § 1106 (2025).  As in abuse prevention hearings under G. L. c. 209A, the court process "is intended to be expeditious and as comfortable as it reasonably can be for a lay person to pursue.  Judges often must deal with large numbers of these emotional matters in busy court sessions.  The process must be a practical one."  Frizado, 420 Mass. at 598.  Applying these standards, we discern no due process violation.  The record shows that each party was given a fair opportunity to be heard and does not suggest that the defendant was limited in any part of her defense.  Contrast Idris I., 100 Mass. App. Ct. at 789 (due process violation where judge "did not respond" to counsel's repeated protest).  In fact, the record reflects that the judge acted fairly and conscientiously towards both parties. For instance, at one point during the hearing, the defendant

10

apologized for using "a lot of hand gestures" during her testimony.  The judge reassured the defendant, saying "you're fine," and the defendant continued to explain her version of events.  Finally, the judge did not interrupt the defendant when she testified at length about a variety of personal issues such as the impact that a harassment prevention order would have on herself and her autistic son, as well as other personal details about her mother's health issues and death.  A review of the transcript supports our conclusion that the defendant had a full and fair opportunity to challenge the plaintiff's evidence and present a defense and that she did not suffer from a denial of due process.[2]

> Order dated April 29, 2025, extending harassment prevention order affirmed.
>
> By the Court (Shin, Walsh & Allen, JJ.[3]),
>
> Clerk

Entered:  March 17, 2026.

---

[2] Finally, there is no merit to the defendant's claim that the judge erred in failing to make specific factual findings related to the best interests of the defendant's seven year old child, as that is not a relevant inquiry in a G. L. c. 258E proceeding.

[3] The panelists are listed in order of seniority.