NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-529

C.K.

vs.

S.H.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, S.H., timely appeals from a District Court order issued on March 14, 2025, extending an abuse prevention order after a two-party hearing.  See G. L. c. 209A, § 3.  The defendant argues that the judge abused his discretion in granting the extension.  We affirm.[1]

Background.  During the 2022-2023 school year, the plaintiff traveled from Massachusetts, where she attended college, to her family home in Canada to spend winter break with her mother and the defendant, her stepfather.  Her mother and the defendant were having marital problems at the time.  On

_____

[1] The plaintiff, C.K., did not file a brief and has not otherwise participated in this appeal.

January 15, 2023, while the plaintiff was present, the defendant began acting "erratically and aggressively."  He spent hours verbally abusing the plaintiff's mother, threatened her with a BB gun,[2] and threw his cell phone at the mother's head.  The plaintiff called the police who immediately took the defendant to the hospital for a psychiatric evaluation.  The plaintiff and her mother "waited in fear" at the family home and "were not allowed to know when [the defendant] would be released."

Upon his release, the defendant returned to the family home and immediately chased the plaintiff's mother around the house until the mother locked herself in the bathroom.  At this point, the plaintiff hid in her bedroom, "trembling with anxiety." When the defendant moved away from the bathroom, the plaintiff's mother ran into the plaintiff's bedroom and the two stood behind the door to hold it closed, fearing the defendant would try to enter.  While the two remained barricaded in the bedroom, with the mother crying and the plaintiff calling the police, the defendant "stomped around the house shouting erratic things." The defendant also called the police and reported untruthfully that the plaintiff's mother, who was sealed in the plaintiff's bedroom, had a knife pointed at him.

_____

[2] The defendant was "very angry" after discovering the plaintiff's mother legally owned half of the marital home.

After the police responded and left without taking action, the defendant punched the plaintiff's mother in the face, an assault overheard by the plaintiff from her bedroom. At that point, because of the "physical threats and abuse" and the incessant berating, the plaintiff and her mother fled to stay with the plaintiff's maternal grandmother. The plaintiff and her mother attempted to return to the home on the condition that the defendant and the plaintiff's mother each "be civil"; however, the verbal abuse toward the mother did not stop, "happened every single day, all day," and from January 15 to January 22, 2023, the plaintiff "stayed awake every single night . . . because [she] was terrified of waking up to [her] mother dead or injured, because [the defendant's] personality had done a complete 180 from how [the plaintiff] knew him, and [she] no longer could predict anything with assuredness that he would not do to her mother or [herself]." On January 22, the plaintiff returned to her college in Massachusetts. After the plaintiff's departure, the defendant told the plaintiff's mother that he planned to visit the plaintiff at her college from time to time "because he [felt] that [the plaintiff was] still his daughter regardless of his relationship with [her] mother but he also stated that [the plaintiff] had betrayed him by moving [her] things out of the home." In her affidavit, the plaintiff

3

asserted that she had no direct "idea what his current feelings" were towards her because they had not spoken since January 15th.

Soon after the plaintiff left, Canadian authorities arrested the defendant for abuse. He was released from jail on February 19, 2023, on the conditions that the defendant not communicate with the plaintiff or her mother, not attend the family home where the mother continued to reside, and stay one hundred meters away from the plaintiff's and her mother's "known locations" (conditions of release).

Notwithstanding the conditions of release, in the week leading up to March 3, 2023, the defendant sent a realtor to the family home and attempted to have the utilities shut off. An employee of the utility company called the plaintiff's mother to tell her that the defendant had stated that "he was very close to the home and would be back in the home within two weeks."

On March 3, 2023, the plaintiff filed a complaint for protection from abuse in a Massachusetts District Court.[3] In her affidavit submitted in support of her requests for protection, the plaintiff further explained that she was worried "about [the defendant's] obsessiveness over holding onto things that upset

---

[3] The plaintiff reported in her complaint that her mother and the defendant were legally separated, but no court dates were "set yet."

4

him."[4]  The plaintiff asserted that "[d]ue to [the defendant's] past and recent behavior and current mental state, [she] fear[ed] for her own safety that he will come to [her college] with the objective of seeing [her] -- despite his release conditions -- with less than good intentions."  At the ex parte hearing on the complaint, the judge inquired why the plaintiff was fearful for her own safety where the defendant had targeted her mother.  The plaintiff explained that she was told the defendant was upset with her for leaving the family home, he had expressed his desire to visit her in Massachusetts, and his mental state was not stable.  Based on the plaintiff's testimony, a judge issued the initial ex parte abuse prevention order.  See G. L. c. 209A, § 4.

On March 17, 2023, another judge extended the order after a two-party hearing.  The plaintiff testified that everything in her affidavit was true, and that she remained in fear of the defendant; the defendant appeared and did not oppose the extension.  A third judge extended the order in March 2024 after a two-party hearing at which the defendant again had "no objection to the extension."  In March 2025 the same judge who issued the March 17, 2023 extension order concluded that the

_____

[4] As an example, the plaintiff stated that the defendant had flown from the family home to a different province in Canada to ask his ex-wife why she had committed adultery.

5

plaintiff had met her burden to prove that an abuse prevention order was "necessary to protect [her] from the likelihood of abuse."

Discussion.  The sole question for our determination is whether the judge abused his discretion by extending the abuse prevention order in March 2025.[5]  "The inquiry at an extension hearing is whether the plaintiff has shown by a preponderance of the evidence that an extension of the order is necessary to protect her from the likelihood of 'abuse' as defined in G. L. c. 209A, § 1" (citation omitted).  Constance C. v. Raymond R., 101 Mass. App. Ct. 390, 394 (2022).  As the plaintiff proceeded at all times under G. L. c. 209A, § 1 (b), she had the burden of proving that she was in reasonable fear of imminent serious physical harm from the defendant.  See Constance C., supra.  In determining whether the plaintiff met her burden, the judge was required to "consider the totality of the conditions that exist at the time that the plaintiff seeks the [order]" (quotation and citation omitted), Calliope C. v. Yanni Y., 103 Mass. App. Ct.

_____

[5] The propriety of the 2023 and 2024 orders is not properly before us.  The defendant did not object to the issuance of these orders and did not appeal from them.  See Iamele v. Asselin, 444 Mass. 734, 742 (2005) (where no appeal was taken from original c. 209A order, order's "underlying basis [is] not to be reviewed, nor its validity second guessed" at extension hearing); Yasmin Y. v. Queshon Q., 101 Mass. App. Ct. 252, 258 (2022) ("[T]he restrained party may [not] challenge the evidence underlying the initial order" [citation omitted]).

6

722, 725 (2024), and "[t]he judge is to consider the basis for the initial order in evaluating the risk of future abuse should the existing order expire." Iamele v. Asselin, 444 Mass. 734, 740 (2005). "We review the extension of a c. 209A order for an abuse of discretion or other error of law" (quotation and citation omitted). Latoya L. v. Kai K., 104 Mass. App. Ct. 173, 177 (2024). "[A] judge's discretionary decision constitutes an abuse of discretion where [the reviewing court] conclude[s] the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). A judge's finding that a plaintiff remains in reasonable fear of imminent serious physical harm must be also supported by sufficient evidence. See Diaz v. Gomez, 82 Mass. App. Ct. 55, 62 (2012).

We conclude that the judge's decision to extend the abuse prevention order in March 2025 fell within the range of reasonable alternatives and is supported by the record evidence. At the two-party hearing, the plaintiff testified that she remained in fear of the defendant and had not been home in a long time because of her fear. As the plaintiff explained to the judge, the defendant and her mother were currently "undergoing the divorce process and it's going to court, and I'm

7

very worried that he's angry about it." The plaintiff had observed the defendant tapping on his BB gun while asking the plaintiff's mother "if she was going to take the house in the divorce." See note 2, supra. This fear was reasonable because in addition to the divorce proceeding, the defendant's criminal case in Canada that arose from the defendant's physical abuse of the plaintiff's mother, witnessed by the plaintiff, was also still open. See Iamele, 444 Mass. at 740 (in evaluating the risk of future abuse, the judge should consider factors such as "ongoing . . . litigation that engenders or is likely to engender hostility"). Further explaining the basis of her continuing fear, the plaintiff testified that the defendant told their neighbor in Canada "how he would kill [the plaintiff's] mother." In response to the judge's questioning about that statement, the plaintiff testified that while none of the defendant's violence was ever directed at her, she had witnessed physical abuse of her mother and the family dog, and she was concerned that during a future incident, the defendant "could become violent to [her] as well." As the plaintiff reminded the judge, to her knowledge the defendant had stated that "he would come down here" to Massachusetts.

Thus, the "totality of the conditions" of the parties' relationship that existed as of March 2025, included the defendant's erratic and unstable behavior, the threat to the

plaintiff to come to Massachusetts to see the daughter who had "betrayed" him, the defendant's disregard of the conditions of his release, the escalation of the defendant's verbal abuse of the mother to physical violence witnessed by the plaintiff, and, more recently, the defendant's contemplation of the way he planned to kill the plaintiff's mother -- words that could possibly be construed as calculated to strike fear in the plaintiff and her mother. Given this history, the upcoming divorce proceedings with their potential for increasing anger and hostilities, and the defendant's ongoing criminal action, the judge could reasonably have concluded that the "situation remained volatile," and that the plaintiff had demonstrated that "she was in reasonable fear of imminent serious physical harm, justifying her continued need for the order." Vittone v. Clairmont, 64 Mass. App. Ct. 479, 489 (2005). Indeed, "[w]e accord the credibility determinations of the judge who heard the testimony of the parties . . . [and] observed their demeanor . . . the utmost deference" (quotations and citation omitted). Noelle N. v. Frasier F., 97 Mass. App. Ct. 660, 664 (2020). We discern no abuse of discretion in extending the order in 2025.

We are not persuaded by the defendant's argument that "[t]here is nothing showing an ongoing need for protection from abuse that would require extension of [the] order." This argument ignores the judge's obligation to weigh the totality of

9

the circumstances, including the basis for the original order. See Iamele, 444 Mass. at 740. While it is true that as of March 2025, the defendant had abided by and not violated the order, and the parties were not likely to encounter each other in the course of their daily lives, other factors plainly did not weigh in the defendant's favor and supported the judge's conclusion that extension of the order was necessary to protect the plaintiff from the likelihood of abuse.[6] See id. See also Callahan v. Callahan, 85 Mass. App. Ct. 369, 374 (2014) ("[n]o one factor [in the totality of the circumstances test] is likely to be determinative" [citation omitted]); Rauseo v. Rauseo, 50 Mass. App. Ct. 911, 912 (2001), quoting G. L. c. 209A, § 3 ("[t]he fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for denying or failing to extend the order . . . .").

---

[6] In ruling that the plaintiff had met her burden, the judge specifically relied on the plaintiff's testimony at the hearing, including her testimony about the defendant's threats to come to Massachusetts, the physical violence, and the plaintiff's "percipient observations of them." As noted supra, other relevant factors supporting extension were the pending and upcoming litigation between the defendant and the plaintiff's mother, the criminal action against the defendant arising from the abuse of the plaintiff's mother, the defendant's threat to kill the plaintiff's mother, and the plaintiff's testimony that she feared that the defendant, in carrying out the planned future violence toward her mother, "could become violent to her as well."

10

To the extent that the defendant argues that the plaintiff's fear was unreasonable because his abuse and violence were directed solely against her mother, the judge was entitled to draw an inference that, given all the facts and circumstances, the defendant wanting to see the plaintiff

because she betrayed him suggested a risk of violence toward her.  There was no error.

> Order dated March 14, 2025,
>   extending abuse prevention
>   order, affirmed.
>
> By the Court (Rubin,
>   Desmond, & Allen, JJ.[7]),
>
> Clerk

Entered:  June 8, 2026.

---

[7] The panelists are listed in order of seniority.